IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| VOLKERT, INC. | ) |
| | ) |
| v. | ) No. 3:18-1344 |
| | ) |
| FINANCIAL TECHNOLOGY CORP. | ) |

**To: The Honorable William L. Campbell, Jr., District Judge**

### R E P O R T  A N D  R E C O M M E N D A T I O N

Currently pending is Plaintiff's motion for a determination that this Court may exercise subject matter jurisdiction. *See* Docket Entry ("DE") 43. Defendant has filed a responsive brief that includes a motion to dismiss for lack of subject matter jurisdiction. *See* DE 46. Plaintiff has also filed a reply to Defendant's response. *See* DE 47. Both motions have been referred to the Magistrate Judge for report and recommendation. *See* DE 48.

For the reasons that follow, the undersigned recommends that Plaintiff's motion (DE 43) be DENIED, that Defendant's motion (DE 46) be GRANTED, and that this matter be DISMISSED WITHOUT PREJUDICE.

### I. Background

Plaintiff Volkert, Inc. ("Plaintiff" or "Volkert") is an Alabama corporation that is authorized to transact business in the state of Tennessee.[1] Plaintiff became a judgment creditor of a Tennessee corporation known as Smart Data Strategies, Inc. ("SDS") after obtaining an Alabama state court judgment against SDS in 2016 and subsequently domesticating this judgment in Tennessee in 2017. Plaintiff later filed a complaint in this Court on December 4,

---

[1] Unless otherwise indicated, all facts and allegations are taken from Plaintiff's complaint and Defendant's answer. *See* DE 1, 24.

2018 in which it sought to impose successor liability on Defendant Financial Technology Corporation ("Defendant" or "FTC"), a Tennessee corporation, for debts incurred by SDS. Plaintiff alleged that SDS transferred its assets to Defendant for little or no consideration while SDS and Defendant shared common officers and directors, and that Defendant continued the business of SDS in uninterrupted fashion.

The complaint alleged the existence of diversity jurisdiction pursuant to 28 U.S.C. § 1332 due to Plaintiff's belief that Defendant's principal place of business was located in Lewisburg, Tennessee. Defendant's answer neither denied that diversity jurisdiction existed nor raised a jurisdictional defense in response to this allegation, with Defendant instead asserting that FTC's primary place of business was actually in Northport, Alabama.[2] Because a corporation is a citizen of both the state in which it was incorporated *and* the state of its principal place of business, *Roberts v. Mars Petcare US, Inc.*, 874 F.3d 953, 955-56 (6th Cir. 2017), and because Defendant's status as a citizen of Alabama would therefore destroy diversity jurisdiction, the undersigned entered an order requiring the parties to engage in initial discovery for the limited purpose of addressing the issue of diversity jurisdiction in this matter. *See* DE 31. At the conclusion of this discovery period, Plaintiff filed the instant motion requesting a finding that this Court may exercise subject matter jurisdiction over the current dispute.

## II. Analysis

Federal courts possess jurisdiction over "all civil actions where the matter in controversy exceeds the sum or value of $75,000 ... and is between ... citizens of different States[.]" 28 U.S.C. § 1332(a)(1). It is well-established that jurisdiction pursuant to 28 U.S.C. § 1332 requires complete diversity between the parties, meaning that the plaintiff and the defendant must be

---

[2] The Court notes that Defendant did not file its answer until after Plaintiff moved for and was granted an entry of default against Defendant. *See* DE 15, 18, 24. The District Judge ultimately set aside the entry of default despite Defendant's untimely filing. *See* DE 28.

citizens of different states. *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 377 (1978) (collecting cases). The burden of establishing the existence of diversity lies with the party asserting it, *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994), which in this case is Plaintiff.

Plaintiff's brief relies heavily on Defendant's failure to adhere to basic corporate formalities to effectively claim that Defendant has forfeited any argument that it is not a citizen of Tennessee for purposes of diversity jurisdiction. Plaintiff lodges numerous allegations of suspect business practices toward Defendant, none of which are challenged in the responsive filing, including significant violations of FTC bylaws, inaccurate representations in filings with the Tennessee Secretary of State, and improper delegation of authority to a consultant. For example, despite bylaws indicating that FTC "shall be managed by a Board of Directors" (DE 44-3 at 8), Defendant's activities were largely the result of decision-making by their chief financial officer ("CFO"), Ed Lowery, who was not a board member. In fact, FTC's chief executive officer ("CEO"), Al Smith, was unable to identify which individuals even served on the board of directors during his deposition, and later testified that the role of the board at FTC was "minimal." DE 44 at 7-8.

FTC maintained similarly little concern for the accuracy of its public disclosures. In addition to incorporating in Tennessee and drafting a charter stating that its "principal office" was located in Franklin, Tennessee, FTC indicated in a Corporation Annual Report Form filed on September 4, 2018, just three months before Plaintiff filed its complaint in this matter, that its "principal office address" was located in Lewisburg, Tennessee. DE 44-1 at 1. However, Defendant now claims that FTC has instead been "run from" various locations in Alabama, including Mobile, Birmingham, and Northport. DE 46 at 3-4. Curiously, Defendant goes on to

contend that "[s]ubsequent to 2015, there was no place in Tennessee designated as FTC's place of business" (*id.* at 4), which can only be accepted as fact if one is willing to wholly ignore the aforementioned Corporation Annual Report Form filed in 2018.

Defendant's brief makes no attempt to explain the irregular regulatory filings or the fact that a non-board member appears to exert primary control over FTC's business endeavors in direct contravention to its bylaws. Defendant does not respond to Plaintiff's contention that FTC "has not even qualified as a corporation authorized to transact business in the [s]tate of Alabama." DE 44 at 2. Nor does Defendant acknowledge any of Plaintiff's allegations regarding the haphazard manner by which Defendant has participated in the discovery process, which involved inconsistent interrogatory responses, conflicting deposition testimony, and a failure to produce any corporate documentation demonstrating FTC's purported relocation of its principal place of business from Tennessee to Alabama in 2017. DE 44 at 6-11.[3]

However, the determination of diversity jurisdiction does not depend on Defendant's slipshod litigation tactics. *See Wisconsin Dep't of Corr. v. Schacht*, 524 U.S. 381, 382 (1998) ("The presence of a nondiverse party automatically destroys such jurisdiction: No party need assert the defect. No party can waive the defect, or consent to jurisdiction."). The parties agree that FTC is a Tennessee corporation but dispute the location of its principal place of business, which requires the Court to determine where FTC's highest officers direct, control, and coordinate the corporation's activities. *Hertz Corp. v. Friend*, 559 U.S. 77, 92-93 (2010). This

---

[3] Plaintiff highlights the contradiction between the claim in Defendant's brief that FTC was operated from Alabama in 2013 (DE 46 at 3) and Defendant's interrogatory response suggesting that its principal place of business was in Alabama beginning in 2017. DE 44-6 at 10. Even more concerning is Plaintiff's allegation that Defendant failed to produce during discovery a copy of a consulting agreement entered into by Ed Lowery and FTC. DE 47 at 2, n.1 Such failure comes on the heels of the Court's prior order requiring Defendant to produce certain documents it had previously withheld. *See* DE 36. Needless to say, the undersigned is entirely unimpressed with counsel for Defendant's management of the current case.

4

location is known as the company's "nerve center" and is usually, though not always, the site of the corporation's headquarters. *Id*. at 93.

Based on the parties' briefing, the following facts are not in dispute. By the end of 2017, FTC did not have an office located anywhere in the state of Tennessee. DE 46 at 5; DE 46-7 at 5. Ed Lowery, CFO of FTC, managed the daily activities of the company in conjunction with Al Smith, CEO and sitting board member of FTC. DE 44 at 6; DE 46 at 4. Mr. Smith has remained a resident of Huntsville, Alabama for 30 years and has never lived in Tennessee. DE 46 at 4; DE 46-9 at 3. Mr. Lowery has not been a resident of Tennessee since September of 2017, at which time he moved to Tuscaloosa, Alabama, where FTC's daily operations were conducted through his personal residence until February of 2018. DE 44 at 11; DE 44-6 at 10. Beginning in February of 2018, FTC conducted all operations through its only remaining office in Northport, Alabama. DE 46 at 4; DE 46-7 at 4. Plaintiff's complaint was not filed until December 4, 2018. *See* DE 1. It therefore cannot be reasonably disputed that at the time of the filing of the complaint, FTC's "nerve center" was located somewhere in Alabama, whether Huntsville, Northport or elsewhere, but certainly not in Tennessee.

Plaintiff's arguments with respect to FTC's misleading public filings and its counsel's muddled representations, while abundantly understandable, do not provide evidence to establish that FTC's nerve center is actually located in Tennessee, which is the Court's sole concern in this matter. *Andrews v. TD Ameritrade, Inc.*, 596 F. App'x 366, 372 (6th Cir. 2014). Plaintiff posits a novel approach that asks the Court to employ jurisdiction as a weapon to punish Defendant for its regulatory dereliction. To do so would be judicial overreach, however, as the site of a corporation's principal place of business "is purely a question of fact," *Overton v. Rainbo Baking Co. of Johnson City*, 239 F. Supp. 800, 801 (E.D. Tenn. 1964), which cannot be founded on

statements made in corporate filings that "run contrary to the empirical facts with which the jurisdictional inquiry is concerned." *Mennen Co. v. Atlantic Mut. Ins. Co.,* 147 F.3d 287, 293-94 (3d Cir. 1998). Indeed, a host of courts have held that statements made in corporate forms are not dispositive of jurisdiction. *See Bauer Found. Corp. v. IMI Tennessee, Inc.*, No. 3:19-cv-0849, 2019 WL 6273253, at *4 (M.D. Tenn. Nov. 25, 2019) (collecting cases).

Despite FTC publicly presenting itself as a Tennessee corporation, there is no indication that the company's activities were occurring anywhere other than within the state of Alabama at the time the complaint was filed, which means that FTC's nerve center was located in Alabama. *Cf. Hertz*, 559 U.S. at 96 (2010) ("For example, if the bulk of a company's business activities visible to the public take place in New Jersey, while its top officers direct those activities just across the river in New York, the 'principal place of business' is New York."). Put another way, FTC was being "ultimately controlled" from one or two locations in Alabama, which is the relevant metric for a nerve center determination. *Harrison v. Granite Bay Care, Inc.*, 811 F.3d 36, 41 (1st Cir. 2016). The Court therefore finds that FTC's principal place of business was, at the time of the filing of the complaint, in the state of Alabama. As a result, the Court concludes that FTC is a citizen of Alabama and thus complete diversity does not exist in the current matter. Because the Court lacks subject matter jurisdiction, this matter should be dismissed.

### III. Recommendation

Based on the foregoing, it is respectfully recommended that Plaintiff's motion (DE 43) be DENIED, Defendant's motion (DE 46) be GRANTED, and that this matter be DISMISSED WITHOUT PREJUDICE.

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of service of this Report and Recommendation and must state

with particularity the specific portions of this Report and Recommendation to which objection is made. Fed. R. Civ. P. 72(b)(2); Local Rule 72.02(a). Failure to file specific written objections within the specified time can be deemed to be a waiver of the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Cowherd v. Milton*, 380 F.3d 909, 912 (6th Cir. 2004) (*en banc*).

                                          Respectfully submitted,

                                          BARBARA D. HOLMES
                                          United States Magistrate Judge